1

2

3

4

5

6

7

8                                UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,                      No.  1:17-cr-00170-NONE

12                     Plaintiff,

13           v.                                      ORDER DENYING DEFENDANT'S
                                                     MOTION FOR COMPASSIONATE
14    ELIOT BROWN,                                   RELEASE

15                     Defendant.                    (Doc. No. 27)

16

17

18           Pending before the court is defendant Eliot Brown's motion for compassionate release

19    pursuant to 18 U.S.C. § 3582(c)(1)(A).  The motion is largely based on defendant's medical

20    condition and the risks posed to him by the ongoing coronavirus ("COVID-19") pandemic.  (Doc.

21    No. 60.)  For the reasons explained below, defendant's motion will be denied.

22                                          **BACKGROUND**

23           On July 24, 2017, defendant Brown waived his right to proceed in this action by way of

24    grand jury Indictment and entered a plea of guilty to count one of an Information charging him

25    with receipt and distribution of material involving the sexual exploitation of minors in violation

26    of 18 U.S.C. § 2252(a)(2).[1]  (Doc. Nos. 2 at 2; 3, 5 and 6.)  The presentence report prepared in

27    _____

28    [1]  That offense of conviction carried with a punishment of a mandatory minimum 5 year term of
      imprisonment up to a maximum of 20 years.  (Doc. No. 2 at 8.)

                                                    1

1   defendant's case following his entry of plea summarized his offense conduct, reporting that an

2   investigation into defendant was launched in April 2014 after he uploaded a file of containing

3   child pornography to a Facebook server.  (Doc. No. 8 (Presentence Report) at 4.)  Law

4   enforcement identified the IP address in question as belonging to defendant.  (*Id.*)  Thereafter, law

5   enforcement agents conducted a search warrant of defendant's residence, including his cell phone

6   and computer.  (*Id.* at 4–5.)  The search revealed that his computer contained 239 images of child

7   pornography, 12 child pornographic videos, and 1,365 images and five videos of child erotica.

8   (*Id.* at 5–6.)  Defendant's cell phone was found to contain another 130 of child pornography

9   images, 64 child pornographic videos, and 760 images and seven videos of child erotica.  (*Id.* at

10  6.)  "Some of the images portrayed sadistic or masochistic conduct, or other depictions of

11  violence."  (*Id.*)  Finally, the investigation revealed that defendant had developed improper

12  personal relationships with some of the victims.  (*Id.* at 5–6.)  After defendant's plea of guilty was

13  entered, it was determined that under the U.S. Sentencing Guidelines defendant's adjusted offense

14  level was 37 and his criminal history placed him in category I, resulting in an advisory sentencing

15  guideline range calling for a term of imprisonment in his case of between 210 and 240 months.

16  (*Id.* at 16.)  However, the U.S. Probation Office recommended a downward variance from the

17  sentencing guideline range to a sentence of 135 months because of defendant's "well-documented

18  psychological evaluations" revealed that he suffered social and developmental delays during

19  childhood, tested below average with respect to communication, daily living skills and

20  socialization and was at a borderline level of intellectual functioning.  (*Id.* at 16–17.)  On October

21  16, 2017, the court sentenced defendant to 135 months in prison, a 180-month term of supervised

22  release to follow, and a special assessment of $100.  (Doc. Nos. 16; 17 at 2–7.)

23       Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP")

24  Lompoc Federal Correctional Institution in Lompoc, California ("FCI Lompoc").  *Find an*

25  *inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Dec. 22,

26  2020.).  Defendant's projected release date is April 6, 2027.  *Id.*  On November 2, 2020,

27  defendant filed the pending motion for compassionate release pursuant to 18 U.S.C.

28  § 3582(c)(1)(A).  (Doc. No. 27.)  On November 20, 2020, the government filed its opposition to

1  the motion, and on December 7, 2020, defendant filed his reply thereto.  (Doc. Nos. 30, 35.)

2  **LEGAL STANDARD**

3  A court generally "may not modify a term of imprisonment once it has been imposed."  18

4  U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of

5  conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not

6  be modified by a district court except in limited circumstances.").  Those limited circumstances

7  include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp.

8  3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"),

9  motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A)

10  (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for

11  compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).  In this regard, the

12  FSA specifically provides that a court may

13  upon motion of the defendant after the defendant has fully exhausted

14  all administrative rights to appeal a failure of the [BOP] to bring a
motion on the defendant's behalf[2] or the lapse of 30 days from the

15  receipt of such a request by the warden of the defendant's facility,
whichever is earlier, may reduce the term of imprisonment (and may

16  impose a term of probation or supervised release with or without
conditions that does not exceed the unserved portion of the original

17  term of imprisonment), after considering the factors set forth in [18
U.S.C. §] 3553(a) to the extent that they are applicable, if it finds
that –

18

19  (i)     extraordinary and compelling reasons warrant such a
reduction; or

20  (ii)    the defendant is at least 70 years of age, has served at least 30

21  years in prison, pursuant to a sentence imposed under section
3559(c), for the offense or offenses for which the defendant

22  is currently imprisoned, and a determination has been made
by the Director of the [BOP] that the defendant is not a danger
to the safety of any other person or the community, as

23

24  [2]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the

25  defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the
date the Warden signed the response."  28 C.F.R. § 542.15(a).  If the Regional Director denies a

26  defendant's administrative appeal, the defendant must appeal again to the BOP's "General
Counsel within 30 calendar days of the date the Regional Director signed."  *Id.*  "Appeal to the

27  General Counsel is the final administrative appeal."  *Id.*  When the final administrative appeal is
resolved, a defendant has "fully exhausted all administrative rights."  *See* 18 U.S.C.

28  § 3582(c)(1)(A).

1  |  provided under section 3142(g);

2  |  and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

3

4  |  18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

5  The applicable policy statement with respect to compassionate release in the U.S.

6  Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and

7  compelling reasons."  U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[4]; *see also*

8  *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts

9  "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even

10  though that policy statement was issued before Congress passed the FSA and authorized

11  defendants to file compassionate release motions).  However, a large and growing number of

12

---

13  [3]  Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6

14  months."  The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial

15  intervention.  The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director

16  determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP.  CARES Act, Pub. L. 116-136, Div. B, Title II,

17  § 12003(b)(2) (2020).  However, the BOP's authority in this regard is limited to "the covered emergency period."  *Id.*  The BOP's authority expires "30 days after the date on which the

18  national emergency declaration terminates."  *Id.* § 12003(a)(2).  After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all

19  inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations."  Office of Att'y Gen., *Increasing Use of*

20  *Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020).  The BOP has

21  acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported

22  no positive COVID-19 cases at the time of his release.  *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.

23  com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release

24  prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-

25  manafort-released-from-prison-amid-covid-19-fears.

26

27  [4]  The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person

28  or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).

1    district courts across the country have concluded that because the Sentencing Commission has not

2    amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA

3    categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling

4    circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c).  *See,*

5    *e.g.*, *United States v. Parker*, 461 F. Supp. 3d 966, 978–79 (C.D. Cal. 2020) (collecting cases);

6    *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

7         In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the

8    defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See*

9    *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit

10   has not specifically addressed the question of which party bears the burden in the context of a

11   motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts

12   that have done so have agreed that the burden remains with the defendant.  *See, e.g.*, *United*

13   *States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020);

14   *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7,

15   2020).

16                                         **ANALYSIS**

17        As district courts have summarized, in analyzing whether a defendant is entitled to

18   compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a

19   defendant has satisfied three requirements:

20            First, as a threshold matter, the statute requires defendants to exhaust
              administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a
21            district court may grant compassionate release only if "extraordinary
              and compelling reasons warrant such a reduction" and "that such
22            reduction is consistent with applicable policy statements issued by
              the Sentencing Commission.  *Id.*  Third, the district court must also
23            consider "the factors set forth in Section 3553(a) to the extent that
              they are applicable."  *Id.*
24

25   *Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-

26   LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 973–74;

27   *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9,

28   2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be

                                              5

1    "consistent with" the sentencing factors set forth in §3553(a)).

2    **A.       Administrative Exhaustion**

3           On July 16, 2020, defendant submitted an administrative request to the Warden at FCI

4    Lompoc seeking compassionate release based on his medical conditions and the circumstances of

5    his family, i.e., his elderly parents needing his care.  (Doc. No. 27-1 at 1.)  On September 9, 2020,

6    the administrative remedy coordinator at FCI Lompoc replied, stating that additional time was

7    needed to properly respond to defendant's administrative request, "as provided for in the

8    administrative remedy program statement."  (*Id.* at 2–3.)  In short, defendant exhausted his

9    administrative remedies because he filed the pending motion for compassionate release after

10   submitting a request to the Warden at FCI Lompoc and waiting more than 30 days without

11   receiving a response thereto.  Moreover, the government concedes that administrative exhaustion

12   is satisfied here.  (Doc. No. 30 at 11.)  Therefore, the court will turn to the merits of defendant's

13   motion.

14   **B.       Extraordinary and Compelling Reasons**

15          "Extraordinary and compelling reasons" warranting compassionate release may exist

16   based on a defendant's medical conditions, age and other related factors, family circumstances, or

17   "other reasons."  U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other

18   reasons" was included in the policy statement at a time when only BOP could bring a

19   compassionate release motion, courts have agreed that it may be relied upon by defendants

20   bringing their own motions under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-

21   JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

22          Thus, the medical condition of a defendant may warrant compassionate release where he

23   or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life

24   trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a

25   specific time period) is not required."  U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive

26   examples of terminal illnesses that may warrant a compassionate release "include metastatic

27   solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced

28   /////

1    dementia." *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental

2    condition may warrant compassionate release, including when:

3             The defendant is

4             (I)   suffering from a serious physical or medical condition,

5             (II)  suffering from a serious functional or cognitive impairment, or

6             (III) experiencing deteriorating physical or mental health because of
              the aging process,

7

8             that substantially diminishes the ability of the defendant to provide
              self-care within the environment of a correctional facility and from
              which he or she is not expected to recover.

9

10   *Id.* at cmt. n.1 (A)(ii).  Where a defendant has moderate medical issues that otherwise might not

11   be sufficient to warrant compassionate release under ordinary circumstances, some courts have

12   concluded that the risks posed by COVID-19 tips the scale in favor of release in particular

13   situations.  *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405–06 (E.D. Pa. 2020)

14   ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's

15   health problems, proximity to his release date, and rehabilitation would not present extraordinary

16   and compelling reasons to reduce his sentence.  But taken together, they warrant reducing his

17   sentence.").

18           Compassionate release may also be warranted based on a defendant's age and other

19   related factors.  In these situations, "extraordinary and compelling reasons" exist where a

20   "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or

21   mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of

22   his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).[5]  In

23   determining a defendant's projected release date, courts may take into account any "good time

24   credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18

25   U.S.C. § 3624(b)(1).  *See, e.g.*, *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.1 (N.D. Cal.

26   Apr. 10, 2020).

27
     _____

28   [5]  Because defendant Brown is only 31 years old, (*see* Doc. No. 8 (Presentence Report) at 2),
     these age and age-related factors are irrelevant to the court's disposition of the pending motion.

7

1    Here, defendant Brown argues that extraordinary and compelling reasons warranting his

2    compassionate release exist due to his medical conditions.  To qualify for compassionate release,

3    defendant must demonstrate that he is suffering from some "serious" medical condition "that

4    substantially diminishes [his] ability . . . to provide self-care" in FCI Lompoc and the medical

5    condition is one "from which he . . . is not expected to recover."  U.S.S.G. § 1B1.13, cmt. n.1

6    (A)(ii).  Specifically, defendant argues that his asthma and intellectual disability make him more

7    vulnerable to COVID-19.  (Doc. No. 27 at 8.)  At the time of defendant's sentencing, it was noted

8    that he suffered from asthma and used an inhaler as needed.  (Doc. No. 8 (Presentence Report) at

9    11.)  Additionally, a psychological evaluation prepared in 2008 scored defendant "in the 'low

10   average to borderline deficit' range on the intellectual and adaptive measures administered" and

11   reported that he had "academic achievement at an elementary level."  (*Id.*) Defendant's daily

12   living and socialization skills were found to be equivalent to those of adolescents between seven

13   and 15 years old.  (*Id.*)  According to defendant's BOP medical records, he suffers from asthma

14   and is prescribed an albuterol inhaler, which he is instructed not to use daily but only "as needed

15   to prevent/relieve [an] asthma attack[.]"[6]  (Doc. No. 34 at 10, 19 (sealed).)  Based on the evidence

16   presented in connection with the pending motion, however, it appears that defendant only suffers

17   from a mild condition of asthma.  *See Adult-Onset Asthma*, WEBMD,

18   https://www.webmd.com/asthma/guide/adult-onset-asthma (last visited Dec. 22, 2020).

19   Individuals suffering from symptoms less than twice a week likely suffer from mild intermittent

20   asthma, whereas individuals suffering from symptoms about three to six times a week likely

21   suffer from mild persistent asthma.  *Id.*  Individuals who suffer from moderate persistent asthma

22   (a moderate-intermittent-asthma category does not exist) display symptoms daily, sometimes

23   lasting for days.  *Id.*  However, as noted above, defendant has been instructed not to use his

24   inhaler on a daily basis but only as needed.  No other evidence before the court suggests that

25

26   [6] Defendant is also prescribed "Mometasone Furoate[,]" which he must take daily.  (Doc. No. 34
     at 3 (sealed).)  It appears this prescription is used to "prevent," rather than treat, asthma attacks

27   and other side effects of asthma.  *Mometasone Oral Inhalation*, U.S. NATIONAL LIBRARY OF
     MEDICINE: MEDLINE PLUS, https://medlineplus.gov/druginfo/meds/a608035.html (last visited

28   Dec. 22, 2020).

1    defendant suffers from a moderate asthma condition.  (*See, e.g.*, Doc. No. 34 at 1 (sealed: Denies

2    cough, wheezing, [shortness of breath] or night time symptoms.  No interference in [activities of

3    daily living].").)  Therefore, the court concludes based upon the evidence before it that defendant

4    suffers from mild, not moderate, asthma.

5           According to the United States Centers for Disease Control and Prevention ("CDC"), it

6    does not appear that defendant suffers from any comorbidities that either place or may place him

7    at greater risk of suffering a severe illness were he to contract COVID-19.  *See Coronavirus*

8    *Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR

9    DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

10   precautions/people-at-increased-risk.html (last visited Dec. 22, 2020).  Defendant's mild asthma

11   condition is not an at-risk category, according to the CDC.  *Id.* (stating that individuals with

12   moderate-to-severe asthma "might be at an increased risk," but providing no comment on a mild

13   asthma condition).  Furthermore, the CDC recognizes that individuals with "neurological

14   disorders" may be at greater risk of suffering a severe illness from COVID-19.  *Id.*  However,

15   defendant's intellectual disability is not considered to be a neurological disorder, at least as that

16   term is generally used in the medical field.  *See Neurologic Diseases*, U.S. NATIONAL LIBRARY OF

17   MEDICINE: MEDLINE PLUS, https://medlineplus.gov/neurologicdiseases.html (last visited Dec. 22,

18   2020) (providing examples, such as Parkinson's disease, Huntington's disease, and epilepsy).

19   Defendant argues that the cause of his intellectual disability is unknown.  (Doc. No. 27 at 7.)

20   However, it is the defendant's burden to demonstrate that he is entitled to compassionate release.

21           Because defendant has not identified any comorbidities that place him at greater risk for

22   suffering a severe illness if he were to contract COVID-19, the court concludes that he is not

23   "suffering from a serious physical . . . condition . . . from which he . . . is not expected to

24   recover."  *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  Thus, the court need not consider whether

25   defendant's medical conditions "substantially diminish[] [his] ability . . . to provide self-care" in

26   FCI Lompoc.  *See id.*  The court does observe that the evidence before it establishes that

27   defendant tested positive for COVID-19 on May 7, 2020.  (Doc. No. 34 at 19 (sealed).)

28   Fortunately, he denied having any major symptoms identified with COVID-19 and was monitored

1    by the BOP's medical staff for about two weeks after his positive diagnosis without any issue.

2    (*Id.* at 12–13.)  In short, defendant has failed to carry his burden in demonstrating that his medical

3    conditions warrant his release.  *See Greenhut*, 2020 WL 509385, at *1 ("The defendant bears the

4    initial burden to put forward evidence that establishes an entitlement to a sentence reduction.").

5            Therefore, in this case, the court does not find extraordinary and compelling reasons

6    justifying defendant's compassionate release pursuant to § 3582(c)(1)(A).

7    **C.        Consistency With the § 3553(a) Factors**

8            Because the pending motion fails to establish extraordinary and compelling reasons

9    justifying compassionate release in this case, the court need not address whether any reduction in

10   defendant's sentence would be consistent with consideration of the sentencing factors set forth at

11   18 U.S.C. § 3553(a). [7]  Nonetheless, the undersigned would note that with good time credits

12   accounted for defendant Brown has served only approximately 47 months of his 135–month

13   sentence, or not more than approximately 40% of the sentence imposed.  Moreover, defendant has

14   not even yet served the mandatory minimum term of imprisonment which his offense of

15   conviction carried.  *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477,

16

17   [7] Defendant has suggested that the court could amend the conditions of his supervised release to require him to serve what would have been the remaining portion of his custodial term on home confinement.  (Doc. No. 27 at 6.)  First, the CARES Act "'authorizes the BOP—not courts—to
18   expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)."  *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v.
19   Nash*, No. 19-cr-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal.
20   June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to
21   designate the place of confinement" and the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-
22   54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement").  The district court
23   may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment.  *See United States v. Connell*, No. 18-cr-00281-RS, 2020 WL
24   2315858, at *5, n.6 & *7 (N.D. Cal. May 8, 2020).  Accordingly, to do as defendant requests, the court would be required to reduce his sentence to one of time served and modify the conditions of
25   supervised release to require home confinement for the remainder of his sentence.  The court is unwilling to do so for the reasons set forth above.  The BOP knows its capabilities to effectively
26   and appropriately care for defendant Brown in a custodial setting.  If the BOP determines that defendant should be released to home confinement to serve his sentence under the Attorney
27   General's expanded authority in that regard, the court trusts it will do so.  The issue that this court resolves is merely whether in its view, under the applicable legal standards, defendant's sentence
28   should be reduced at this time.

at *2 (D. Nev. May 28, 2020); *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *5–6 (N.D. Cal. May 26, 2020) ("The length of the sentence remaining is an additional factor to consider in any compassionate release analysis, with a longer remaining sentence weighing against granting any such motion." (citation omitted)).

**CONCLUSION**

For the reasons explained above, the court concludes that defendant has not demonstrated that "extraordinary and compelling reasons" exist warranting his compassionate release from prison.  Accordingly, defendant's motion for compassionate release (Doc. No. 27) is denied.

IT IS SO ORDERED.

Dated:   **December 29, 2020**

_____
UNITED STATES DISTRICT JUDGE